IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHY KING and STEVE KING,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>PFIZER, INC.; WYETH LLC;<br>WYETH PHARMACEUTICALS, INC.;<br>SCHWARZ PHARMA, INC.;<br>PLIVA, INC.; JOHN DOE<br>PHARMACEUTICAL COMPANIES<br>1-40; and MONTE SCOTT, M.D.,<br><br>　　　　　　Defendants. | 8:13CV290<br><br>FINDINGS AND<br>RECOMMENDATION |

　　　This matter is before the court on the plaintiffs', Cathy and Steve King (Kings), Motion to Remand (Filing No. 22).  The Kings filed a brief (Filing No. 23) in support of the motion.  The defendants[1] filed a brief (Filing No. 25) and index of evidence (Filing No. 26) in opposition.  The Kings filed a brief (Filing No. 29) in reply.

　　　On September 17, 2013, the pharmaceutical defendants removed this action from the District Court of Lancaster County, Nebraska, to the United States District Court for the District of Nebraska.  **See** Filing No. 1 - Notice of Removal.  The pharmaceutical defendants allege this action is removable pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties, after the court excludes the fraudulently joined non-diverse defendant physician.  **See** *id.* ¶ 2.  On October 25, 2013, the Kings filed the instant motion to remand arguing this court lacks jurisdiction pursuant to 28 U.S.C. § 1447(c).  **See** Filing No. 22 - Motion.  For the reasons set forth below, the undersigned magistrate judge recommends the Kings' motion to remand be denied and Monte M. Scott, M.D. (Dr. Scott), be dismissed.[2]

---

　　　[1] The defendants Pfizer, Inc. (Pfizer), Wyeth, LLC, and Wyeth Pharmaceuticals, Inc. (Wyeth Pharm.) collectively participated in the briefing of this motion.  The court will refer to these three defendants as the pharmaceutical defendants unless otherwise necessary to differentiate among the defendants.  The pharmaceutical defendants represent the defendant Schwarz Pharma, Inc. (Schwarz) consents to removal.  The pharmaceutical defendants did not contact the defendant PLIVA, Inc. because PLIVA, Inc. had not yet been served at the time of removal.

　　　[2] The court is entering this Findings and Recommendation in this matter due to the recommended dismissal of a party and in light of the split in court decisions over whether a magistrate judge has

## BACKGROUND

The Kings allege Cathy King suffered injuries as a result of ingesting the prescription drug metoclopramide hydrochloride (metoclopramide), a medication for treatment of symptomatic gastroesophageal reflux and diabetic gastric stasis. **See** Filing No. 1-13 - Complaint. The Kings filed their complaint in the District Court of Lancaster County, Nebraska, on August 7, 2013. *Id.* The Kings are residents of Palmyra, Nebraska. *Id.* ¶ 1. Pfizer is a Delaware corporation with its principal place of business in New York. *Id.* ¶¶ 2-3. Wyeth, LLC and Wyeth Pharm. are Delaware corporations with their principal places of business in New Jersey. *Id.* ¶¶ 4-5. Schwarz is a Delaware corporation with its principal place of business in Georgia. *Id.* ¶ 9. PLIVA, Inc. is a New Jersey corporation with its principal place of business in New Jersey. *Id.* ¶ 15. Dr. Scott resides in Lancaster County, Nebraska. *Id.* ¶ 17. The pharmaceutical defendants and Schwarz were manufacturers of the brand-name drug, Reglan®.[3] **See** Filing No. 25 - Response p. 2. PLIVA, Inc. manufactured the generic form of metoclopramide. *Id.*

The Kings allege two causes of action: personal injury and loss of consortium. *Id.* ¶¶ 91-124. The Kings assert six theories of recovery in support of their personal

---

authority to rule on a motion to remand. **Compare** *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001) (finding "remand motions are dispositive and, as such, can only be entered by district courts"), *Williams v. Beemiller, Inc.*, 527 F.3d 259 (2d Cir. 2008), *Stefanik v. City of Holyoke*, 597 F. Supp. 2d 184, 185 (D. Mass. 2009), and *Johnson v. Tyson Fresh Meats, Inc.*, No. C-06-1002, 2006 WL 1004970, at *1 (N.D. Iowa Apr. 17, 2006), **with** *White v. State Farm Mut. Auto. Ins. Co.*, 153 F.R.D. 639 (D. Neb. 1993) (concluding remand of a case to the state court was not an Article III function and could be ordered by a magistrate judge). In *Vogel*, the court concluded:

> [W]e apply a functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion. Applying that test, . . . we too find that a remand order is the functional equivalent of an order to dismiss. The practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court.

*Vogel*, 258 F.3d at 517. **Accord** *First Union Mortg. Corp. v. Smith*, 229 F.3d 992 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998); **see also** *Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp. 2d 239, 241-42 (E.D. N.Y. 2005) (noting that "[m]ost district courts to have considered this issue have found remand to be within a magistrate judge's authority under 28 U.S.C. 636(b)(1)(A). On the other hand, every appellate court that has weighed the issue has determined a remand to be the functional equivalent of a dispositive order, and therefore beyond a magistrate judge's authority.") (collecting cases). The undersigned magistrate judge concludes a recommendation is the most appropriate course of action in this matter.

[3] The Kings represent Reglan® "is a registered trade name that denotes the brand name version of metoclopramide, but is also used in common parlance among the medical community to refer to the drug in general, including any and all versions, brand name and generic." **See** Filing No. 1-13 - Complaint ¶ 23.

injury claim: product liability, conscious misrepresentation, negligent misrepresentation, fraud and fraudulent concealment, negligent failure to provide adequate warnings, and failure to obtain informed consent. *Id.*[4] Generally, the Kings allege pharmaceutical manufacturers of metoclopramide negligently, intentionally, and recklessly misinformed and falsely represented to prescribing physicians the dangerous negative side-effects of long-term use of Reglan®/metoclopramide. *Id.* Between 1988 and 2005, Cathy King's physicians, including Dr. Scott, prescribed Cathy King metoclopramide tablets, syrup, and injections for treatment of her gastrointestinal problems. *Id.* ¶ 41. As a result, Cathy King alleges she suffered and continues to suffer from tardive dyskinesia and tardive akathisia.[5] *Id.* ¶ 45. The Kings allege that in 2009, the Federal Drug Administration (FDA) "publicly announced that use of [metoclopramide] for longer than 12 weeks in duration should be avoided in all but those rare cases where therapeutic benefit could be thought to outweigh the risk of developing tardive dyskinesia[.]" *Id.* ¶ 40. The Kings allege "scientific researchers familiar with the use and effects of [metoclopramide knew] these drugs are associated, probably causally, [with], inter alia, tardive dyskinesia, tardive dystonia, acute dystonic reactions, akathisia, tardive akathisia, and Parkinsonlike symptoms." *Id.* ¶ 36.

The Kings allege Dr. Scott and other physicians "were dangerously misinformed and under-informed about the effects of metoclopramide use on the central nervous system of the human body." *Id.* ¶¶ 43, 65, 70-71, 72, 74, 78. The Kings allege none of the metoclopramide manufacturers provided physicians or the general medical community sufficient information about metoclopramide to enable physicians to prescribe metoclopramide in a reasonably safe manner. *Id.* ¶ 44; **see also** 83, 95, 98, 102, 106, 115, 119. Further, the Kings allege none of the metoclopramide manufactures provided physicians any information about tardive dyskinesia or tardive akathisia. *Id.* ¶ 67. With regard to Dr. Scott, the Kings claim:

> 121. Defendant, Monte Scott, M.D. represented to Cathy King that he possessed and would exercise the degree of

---

[4] The last theory of recovery, failure to obtain informed consent, is the sole theory asserted against Dr. Scott. **See** Filing No. 1-13 - Complaint.
[5] The Kings represent tardive dyskinesia is "a serious, sometimes disabling, largely untreatable, and potentially irreversible drug-induced affliction involving involuntary movements of the torso, neck, head, mouth, lips, tongue, and/or limbs" and tardive akathisia is "drug-induced anxiety and inner restlessness which can cause suicidal ideation and suicide." *Id.* ¶ 36.

> skill, care and learning of a reasonably prudent physician in the state of Nebraska, acting in the same or similar circumstances at the time of the services in question.
>
> 122. Defendant Monte Scott, M.D. prescribed Reglan for Cathy King for a period of time which far exceeded the indicated period of use, as stated in the PDR and the FDA approved package insert for Reglan and generic metoclopramide. As a proximate result of the cumulative toxic overexposure to Reglan®/metoclopramide, Plaintiff Cathy King developed tardive dyskinesia and tardive akathisia which, more likely than not, are irreversible, non-treatable conditions which cause Mrs. King pain and embarrassing involuntary movements which impair her ability to enjoy life. Defendant Monte Scott, M.D. failed to provide Cathy King with material facts about Reglan®/metoclopramide to her. Such material facts would be required by a reasonably prudent patient in order to give her informed consent to using Reglan®/metoclopramide for a period of time that exceeded 12 weeks.

*Id.* The Kings request monetary compensation for Cathy King's physical injuries, loss of earning capacity, past medical expenses no less than $10,000, permanent mental and physical impairment, loss of consortium, judgment interest, and such other and further relief the court deems just and proper. *Id.* at 37-38.

## ANALYSIS

The court must look to a federal statute to determine if an action was properly removed to federal court. The federal statute governing removal provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). The pharmaceutical defendants removed this action based on diversity jurisdiction;[6] therefore, the court must determine whether diversity of the parties exists in order to confer federal jurisdiction. **See** 28 U.S.C. § 1332(a). The

---

[6] "There is federal diversity jurisdiction over this action because plaintiffs are citizens of a state different from that of each non-fraudulently joined defendant. In addition, the requisite amount in controversy for federal diversity jurisdiction is satisfied." **See** Filing No. 1 - Notice of Removal ¶ 2.

4

United States District Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a).  The federal diversity jurisdiction statute provides "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1). Principal place of business refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  **Hertz Corp. v. Friend**, 559 U.S. 77, 92 (2010).  "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction [by a preponderance of the evidence]; all doubts about federal jurisdiction must be resolved in favor of remand[.]"  **Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.**, 561 F.3d 904, 912 (8th Cir. 2009) (internal citations omitted); **see also** In re Prempro Products Liab. Litig., 591 F.3d 613, 620 (8th Cir. 2010).

I.   Amount in Controversy

When, as in the instant matter, damages are not fully specified in the state court complaint, the removing parties "ha[ve] the burden of proving that the amount in controversy exceeds the jurisdictional minimum."  **Bell v. Hershey Co.**, 557 F.3d 953, 956 (8th Cir. 2009).  The pharmaceutical defendants argue the Kings' complaint establishes the Kings' damages exceed the jurisdictional minimum and other courts that have addressed similar matters found the amount in controversy satisfied.  **See** Filing No. 1 - Notice of Removal ¶¶ 35-39 (**citing** **Overton v. Wyeth, Inc.**, No. 10-0491, 2010 WL 4717048, at *4-5 (S.D. Ala. Oct. 29, 2010) report and recommendation adopted, 2010 WL 4716972 (S.D. Ala. Nov. 15, 2010) (concluding allegations plaintiff suffered from tardive dyskinesia from ingesting metoclopramide sufficient to establish the amount in controversy exceeded the jurisdictional minimum); **Smith v. Wyeth Inc.**, 488 F. Supp. 2d 625, 630 (W.D. Ky. 2007) (same)).  The Kings' complaint indicates Cathy King suffers from and will continue to suffer tardive dyskinesia and tardive akathisia as a result of ingesting metoclopramide two to three times a day between 1988 and 2005, well beyond the recommended twelve-week treatment period.  **See** Filing No. 1-13 -

Compl. ¶¶ 40-41, 45.  The Kings further allege the diseases have already caused her physical, emotional, and monetary damage, which will likely continue.  *Id.* at 47.  The court finds, due to the alleged extent of the Kings injuries, the Kings' allegations establish the jurisdictionally required amount in controversy.  Additionally, in their brief in support of remand, the Kings do not mention or contest the matter in controversy exceeds the sum or value of $75,000.  Therefore, the issue remaining before the court is whether Dr. Scott, a non-diverse defendant, is properly joined.

## II.     Diversity

Before addressing the issue of whether the Kings fraudulently joined Dr. Scott to frustrate federal diversity jurisdiction, the court will consider the admissibility of an email the pharmaceutical defendants rely upon to establish Dr. Scott's fraudulent joinder.

### A.     Fed. R. Evid. 408

As part of the pharmaceutical defendants' Notice of Removal, the pharmaceutical defendants reference an "Email from Ralph Pittle"[7] as evidence of the Kings' fraudulent joinder of the non-diverse Dr. Scott.  **See** Filing No. 1 - Notice of Removal; Filing No. 1-1 - Pittle email.  The Kings argue Fed. R. Evid. 408 precludes consideration of the Pittle email because "[t]he email is unquestionably a communication regarding compromise offers and negotiations."  **See** Filing No. 23 - Brief p. 7.  Regardless, the Kings argue the pharmaceutical defendants are misguided in their suggestion the Pittle email demonstrates the Kings have no intention of pursuing Dr. Scott.  *Id.*

In response, the pharmaceutical defendants argue the Pittle email is not for settlement purposes because the email, with the exception of two references to mediation, pertains to litigation strategy, specifically, Mr. Pittle's apparent desire to file claims in state court.  **See** Filing No. 25 - Response p. 6.  Additionally, the pharmaceutical defendants argue the removal statute does not condition removal on admissible evidence and courts have held settlement demands can be considered for purposes of determining jurisdiction.  *Id.* (**citing *Groeneweg v. Flint Hills Res.***, No. 08-

---

[7] The email in question was sent by Ralph Pittle (Mr. Pittle) on June 1, 2013.  **See** Filing No. 1-1 - Pittle email.  For simplicity, the court will refer to the email as the Pittle email.  All parties refer to Mr. Pittle as the Kings' counsel; however, Mr. Pittle is not named as the Kings' counsel in this matter.  **See** Filing No. 1 - Notice of Removal, Filing No. 23 - Brief, Filing No. 25 - Response.

4815, 2008 WL 4951494, at *2 (D. Minn. Nov. 18, 2008) (determining plaintiff's settlement demand relevant to determination of the amount in controversy)). Further, the pharmaceutical defendants argue Rule 408 does not require exclusion when the evidence is offered for a purpose other than to "'prove or disprove the validity or amount of a disputed claim or to impeach.'" *Id.* (**citing** Fed. R. Evid. 408). The pharmaceutical defendants contend Rule 408 does not bar use of the Pittle email to show fraudulent joinder of a non-diverse defendant. *Id.* at 6-7.

The Pittle email provides:

> From Ralph:
>
> William and Hank: I'm forwarding a link to two folders with proof of use and proof of injury documents for two unfiled cases. The King folder also has a video of Mrs. King. I told Hank when I saw him outside Judge Higbee's conference room last month that in light of Judge Higbee's reluctance to make "Erie predictions" I was planning on filing new cases in state courts with physician defendants in order to get the Conte v. Foster[8] question presented to a number of State Supreme Courts. I'm writing to inquire if you would be interested in mediating these cases before I file. I'm planning on referring the King case to Pete Wegman in Lincoln, Nebraska and referring the Sherman case to Paul Stritmatter in Hoquiam, Washington. I've already spoken with both. Paul and I clerked together on the Washington Supreme Court 42 years ago. Pete and I were friends for many years of the late Harry Philo, past President of ATLA. Diana Shennan's prescribing doctor is Bruce Silverman. I've spoken with Dr. Silverman's counsel about my intentions to file against Dr. Silverman. Dr. Silverman was not aware of the warning that was added in 2004 or the black box warning in 2009. He graduated medical school at about the time that the Robins' speakers panel was telling doctors about the Taylor study. It's my understanding that he was relying on information distributed by Robins in those years and his question through his lawyer was "Why don't they tell us when they add new warnings?" Cathy King's prescribing physician is Dr. Monty Scott. Dr. Scott is 92 years old, but still very alert. He was right in the path of the Robins marketing campaign. I spoke to him long enough to learn

---

[8] The pharmaceutical defendants represent Mr. Pittle's reference to "Conte v. Foster" is a reference to the "innovator liability theory" used by a plaintiff to sue brand-name drug manufacturers when the plaintiff only ingested generic drugs. **See** Filing No. 25 - Response p. 2-3. The Kings have not contested the pharmaceutical defendants' characterization.

7

>     the identity of his lawyer but he knows that I believe that your clients are principally responsible for misleading physicians. If the idea of mediating these cases before I file is of interest, let's get a mediation agreement together and I'll send you the rest of the records that I have along with a defense HIPAA and a plaintiff fact sheet. I do need to know one way or the other promptly to avoid any last minute scrambles before statutes expire. Thanks your anticipated courtesy in these matters. Best regards as always.
>
>     Ralph

**See** Filing No. 1-1 - Pittle email.

Assuming a dispute existed at the time Mr. Pittle sent his email,[9] the court finds the Pittle email is not communication protected under Fed. R. Evid. 408. The Pittle email generally discusses Mr. Pittle's litigation strategy. The Kings have not cited any law supporting their assertion that discussion of litigation strategy, and a desire to mediate, is protected as communication encompassing compromise offers and negotiations. Alternatively, even if the Pittle email is a settlement communication, Rule 408 does not prohibit this court from considering the Pittle email to determine jurisdictional issues.

While Rule 408 requires certain exclusions, the rule also provides exceptions: "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." **See** Fed. R. Evid. 408(b). The Advisory Committee Notes state the situations mentioned in the rule are "illustrative" and do not foreclose offering compromise evidence for other purposes. **See** Fed. R. Evid. 408 advisory committee's notes (as noted in the 1972 Proposed Rules section). The pharmaceutical defendants are not introducing the Pittle email as an admission of liability or to prove or disprove the amount of a disputed claim, but instead are offering the Pittle email to show the Kings have no intention of pursuing their alleged claims

---

[9] "Rule 408 only prohibits admitting compromise evidence relating to a 'claim' that was disputed when the settlement negotiations or offer to compromise took place." ***Weems v. Tyson Foods, Inc.***, 665 F.3d 958, 965 (8th Cir. 2011). The court has reservations a dispute existed at the time Mr. Pittle sent the email. The court recognizes, as the parties represent, there are numerous cases involving the same counsel and same defendants; however, there is no basis to assume such disputes are imputed to a dispute between the Kings and the defendants solely because counsel for the parties previously, or currently, litigated against each other over the issue of metoclopramide's known and unknown side-effects.

against Dr. Scott and only included Dr. Scott to frustrate federal diversity. The court finds the Pittle email is offered for a purpose that falls outside the ambit of Rule 408(a).

Additionally, courts have used compromise offers, negotiations, and settlement demands to establish the amount in controversy required for federal diversity jurisdiction. **See *McPhail v. Deere & Co.***, 529 F.3d 947, 956 (10th Cir. 2008) ("[S]ettlement documents] demonstrate plaintiff's own estimation of its claim [and] are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability."); ***Groeneweg***, 2008 WL 4951494, at *2; ***Wang v. Pac. Cycle, Inc.***, 530 F. Supp. 2d 1048, 1051 (S.D. Iowa 2008) ("As a general matter, settlement demands are relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.") (internal quotation omitted). If courts are permitted to consider settlement communications to establish the amount in controversy, as a logical extension, this court is permitted to consider the Pittle email to determine whether the parties are properly joined. Lastly, considering the Pittle email for determining federal diversity jurisdiction does not undermine the purpose of Rule 408, to encourage settlement. Therefore, even assuming Rule 408 applies, the court will consider the Pittle email in determining whether the Kings properly joined Dr. Scott or whether the Kings joined Dr. Scott to frustrate federal diversity jurisdiction.

**B.   Dr. Scott's Joinder**

The Kings contend Dr. Scott is properly joined as a defendant because the Kings assert a cognizable claim, failure to obtain informed consent, against Dr. Scott. **See** Filing No. 23 - Brief p. 2. The Kings argue their allegations against Dr. Scott are specific and based on a common nucleus of operative facts with the Kings' claims against the pharmaceutical defendants. *Id.* at 4-5. The Kings assert their claims against the pharmaceutical defendants, if proven true, might undercut their claims against Dr. Scott, but have no bearing on whether the Kings have a colorable claim against Dr. Scott. *Id.* The Kings also argue the pharmaceutical defendants have alleged the "learned intermediary" doctrine as an affirmative defense, which would place responsibility for Cathy King's use of metoclopramide on Dr. Scott. *Id.* at 3. Lastly, the Kings argue their

claim against Dr. Scott should not be severed and additional discovery into the claim against Dr. Scott is unwarranted because there is no authority to allow additional discovery, and if doubt exists regarding jurisdiction, it should be resolved in favor of remand. *Id.* at 8-9.

The pharmaceutical defendants argue the Kings fraudulently joined Dr. Scott in order to litigate the claims in state court and avoid dismissal of the King's innovator liability claims against the brand-name defendants (Pfizer, Wyeth, LLC, Wyeth Pharm., and Schwarz) in federal court. **See** Filing No. 25 - Response p. 1-2.[10] The pharmaceutical defendants argue Dr. Scott's fraudulent joinder is evident because the Kings' allegations against Dr. Scott are wholly conclusory, lack factual support, and are insufficient to state a claim. *Id.* at 9. The pharmaceutical defendants argue the Kings' complaint is replete with allegations that pharmaceutical companies concealed the alleged risks of Reglan®/metoclopramide from physicians, including Dr. Scott. *Id.* The pharmaceutical defendants contend where the "main thrust of this action is that the [manufacturer] misrepresented [the medication's] risks and failed to adequately warn of such risks . . ., the conclusory allegation that [the defendant physician] 'knew or should have known' of [the medication's] risks" will not defeat removal. *Id.* at 9-10 (**citing *In re Baycol Products Litig.***, No. 02-4835, MDL 1431, 2003 WL 21223842, at * 2 (D. Minn. May 27, 2003)).[11]

---

[10] The pharmaceutical defendants contend Cathy King only ingested generic metoclopramide and is attempting to hold the brand-name manufacturers responsible under the innovator liability theory which, according to the pharmaceutical defendants, the Eighth Circuit has rejected as a valid theory. **See** Filing No. 25 - Response p. 1-2. The pharmaceutical defendants cite ***Fullington v. Pfizer, Inc.***, 720 F.3d 739 (8th Cir. 2013) for the proposition the Eighth Circuit has rejected the innovator liability theory. **See *Fullington***, 720 F. 3d at 744 (dismissing claims against brand-name manufacturers of metoclopramide because the plaintiff only used generic metoclopramide and could not make a product identification for purposes of product liability actions).

According to the Kings' complaint, "Cathy King ingested and/or received the metoclopramide tablets, syrup and injections[.]" **See** Filing No. 1-13 - Complaint ¶¶ 41-42. The Kings do not allege Cathy King was prescribed or ingested Reglan®.

[11] The pharmaceutical defendants cited several additional cases, which they argue are similar to the instant matter, wherein courts denied remand based on fraudulent joinder because a premise of the claim asserted against the non-diverse defendant is knowledge of the dangers posed by the drug at issue, knowledge allegedly withheld from the non-diverse defendant by the pharmaceutical companies. For example, in ***Baisden v. Bayer Corp.***, 275 F. Supp. 2d 759, 762 (S.D. W. Va. 2003), the court denied remand in an action naming a non-diverse physician defendant because "[t]he gravamen of the malpractice case against [the non-diverse physician was] his failure to know what allegedly was deliberately hidden." Further the ***Baisden*** court noted:

> [T]he impossibility of the claim against the non-diverse defendant(s) is implicit in the contradictory allegations: 1) defendant manufacturer hid

10

Additionally, the pharmaceutical defendants argue the Kings not only allege an insufficient claim against Dr. Scott, but the Kings have no intention of pursuing Dr. Scott as revealed in the Pittle email. *Id.* at 5-6. The pharmaceutical defendants contend the Kings filed their action in state court for reasons unrelated to their view of Dr. Scott's culpability. *Id.* at 5-6. Specifically, the pharmaceutical defendants point to the following language from the Pittle email: "I was planning on filing new cases in state courts with physician defendants in order to get the [innovator liability] question presented to a number of State Supreme Courts" and "I believe that your clients are principally responsible for misleading physicians." *Id.*; **see also** Filing No. 1-1 - Pittle email.

Alternatively, the pharmaceutical defendants argue the Kings fraudulently misjoined Dr. Scott under Fed. R. Civ. P. 21. *Id.* at 13-15. The pharmaceutical defendants contend the court should sever the Kings' claim against Dr. Scott because the claim against Dr. Scott and the claims against the pharmaceutical defendants do not arise from the same transaction or series of transactions. *Id.* Lastly, the pharmaceutical defendants argue, at minimum, if the court does not find the Kings fraudulently joined or misjoined Dr. Scott, this court should allow discovery into the propriety of removal. *Id.* at 15-16.

"Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." ***In re Prempro Products Liab. Litig.***, 591 F.3d at 620. The standard for proving fraudulent joinder is whether "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." ***Block v. Toyota Motor Corp.***, 665 F.3d 944, 948 (8th Cir. 2011); **see also** *Filla v. Norfolk S. Ry.*, 336 F.3d 806, 811 (8th Cir. 2003) ("[A] proper review should give paramount consideration to the reasonableness of the basis underlying the state claim."). "In fraudulent joinder cases, some courts examine material beyond the complaint's allegations to determine if there is any factual support for the claims against the allegedly fraudulently joined defendant." ***Block***, 665 F.3d at

---

the information that 2) non-diverse doctor or pharmacist knew or should have known. [T]he premise of the case against the non-diverse defendant(s) that they knew or should have known of the dangers is undercut, defeated, and made impossible by the claims of fraud and misrepresentation against the manufacturers, who allegedly prevented anyone from knowing the dangers.

***Baisden***, 275 F. Supp. 2d at 762-63.

11

948 (internal quotation marks and citation omitted). The "right of removal cannot be defeated by a fraudulent joinder." **Wilson v. Republic Iron & Steel Co.**, 257 U.S. 92, 97 (1921).

Numerous courts have addressed the current issue before this court wherein the plaintiff files an action in state court against pharmaceutical manufacturers and a non-diverse defendant physician, the action is subsequently removed to federal court because the non-diverse defendant physician was allegedly joined to frustrate federal diversity jurisdiction, and the plaintiff moves for remand. The parties cited several cases in which the court either granted or denied remand on facts similar to the instant action. The cases have the same central premise: the pharmaceutical manufacturers concealed or misrepresented risks associated with a certain medication and the prescribing physician was negligent for failing to warn the plaintiff of the risks associated with the medication (a knowledge allegedly withheld from the prescribing physician). **Compare Kling Realty Co., Inc. v. Chevron USA, Inc.**, 575 F.3d 510, 515 (5th Cir. 2009) (affirming denial of motion to remand and dismissing claims against non-diverse defendants because plaintiffs had no reasonable possibility of recovery against the non-diverse defendants); **In re Baycol Products Litig.**, 2003 WL 21223842, at * 2 (denying remand because "the main thrust of [plaintiff's] action [was] that the [pharmaceutical manufacturer] misrepresented [the medication's] risks and failed to adequately warn of such risks" and the "[p]laintiff [did] not include[ ] any factual assertions . . . to support the conclusory allegation that [the defendant physician] 'knew or should have known' of [the medication's] risks."); **In re Rezulin Products Liab. Litig.**, No. 00-2843, 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (determining "an entirely conclusory allegation that the physicians failed to warn of the risks of [a medication] is insufficient" considering "the main tenor of plaintiffs' complaints [was] that [the medication] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"); **with In re Prempro Products Liab. Litig.**, No. 4:03CV1507, 2010 WL 2884887, at *2 (E.D. Ark. July 20, 2010) (granting remand because plaintiffs alleged facts in the complaint the defendant physicians "knew, or should have known through independent research, of the risks" of prescribed medication); **Storlien v. Weigand**, No. 05-1283, 2006 WL 3068878, at *3 (D. Kan. Oct. 25, 2006) (granting remand because

plaintiff made sufficient factual allegations against non-diverse defendant but noting if claim was limited to only an informed consent allegation, the "case for fraudulent joinder might have legs"). The seemingly distinguishable factor in the aforementioned cases in determining whether to remand cases to state court is whether the allegations against the non-diverse defendant physicians are conclusory.

Contrary to the Kings' argument, the Kings do not allege "specific facts giving rise to a possible claim against [Dr.] Scott." **See** Filing No. 23 - Brief p. 5. The court finds the Kings' allegations are conclusory and without sufficient facts to state a cause of action of the type recognized under Nebraska state law. **See** Neb. Rev. Stat. § 44-2816 (Informed Consent); **see also *Curran v. Buser***, 711 N.W.2d 562, 570 (Neb. 2006) (discussing burden of proof in informed consent cases).

The overwhelming tenor of the Kings' complaint is how the pharmaceutical defendants negligently, recklessly, and intentionally misled prescribing physicians concerning the risks associated with metoclopramide use and concealed known material risks of metoclopramide from prescribing physicians, ***including*** Dr. Scott. **See** Filing No. 1-13 - Complaint. For example, the Kings allege:

> **[N]o drug company manufacturer of metoclopramide** has **disseminated** among doctors generally, or **to Cathy King's doctors, through any means, any information about the risks of tardive dyskinesia, akathisia**, or other extrapyramidal responses **associated with the use of metoclopramide** that was more comprehensive or less inaccurate than the information contained in the metoclopramide package inserts, including the untrue statements and half-truths contained therein.

**See** *id.* ¶ 67; **see also** *id.* ¶¶ 43-119 (alleging generally that manufacturers concealed known risks and mislead prescribing physicians). In the "Factual Background" section of the Kings' complaint, Dr. Scott is mentioned only twice. First, the Kings alleged Dr. Scott lawfully prescribed metoclopramide tablets, syrup, and injections to Cathy King. **See** *id.* ¶ 42. Second, the Kings allege: "When prescribing the drug for Cathy King, Defendant Monte Scott, M.D. and each of her other physicians were dangerously misinformed and under-informed about the effects of metoclopramide use on the central nervous system of the human body." **See** *id.* ¶ 43. That is the extent of the Kings' factual allegations against Dr. Scott. Not a single allegation is made regarding the

13

information Dr. Scott knew or should have known regarding metoclopramide or the information Dr. Scott did or did not provide Cathy King.  Thereafter, Dr. Scott is mentioned two more times under the Kings' sixth theory of recovery.  **See** *id.* ¶¶ 120-122.  The Kings provide two conclusory allegations:  1) Dr. Scott represented to Cathy King that he possessed and would exercise skill of a reasonably prudent physician in similar circumstances and 2) Dr. Scott prescribed metoclopramide to Cathy King for more than 12 weeks[12] without providing Cathy King with material facts about tardive dyskinesia and tardive akathisia, which were required to be disclosed, and Cathy King developed tardive dyskinesia and tardive akathisia.  **See** *id.* ¶¶ 121-122.

The Kings' allegations are hardly specific factual allegations to support a claim against Dr. Scott, much less sufficient to provide notice of a claim.  **See** *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, at *2 ("The pleadings shed no light on such matters as whether the defendant physicians allegedly failed to warn of concealed risks, known risks, or both, and how and when the physicians came to be aware of any such risks.  Absent such information, plaintiffs cannot be said to have provided the defendant physicians adequate notice of the claims against them.").  Specific facts would include, for example, what Dr. Scott knew about metoclopramide at the time he prescribed Cathy King metoclopramide, which, according to the allegations in the King's complaint, was nothing about tardive dyskinesia and tardive akathisia due to alleged concealment of such information; what other physicians would have told patients during the same time Dr. Scott prescribed Cathy King metoclopramide; or whether "in [Cathy King's] position would not have undergone the treatment if . . . she were properly informed and that . . . her injuries were proximately caused by the lack of informed consent."  **See Curran**, 711 N.W.2d at 570 (discussing facts necessary to prove an informed consent claim); **Hamilton v. Bares**, 678 N.W.2d 74, 81 (Neb. 2004) (same).   None of the facts or allegations in the Kings' complaint against Dr. Scott are specific; instead they are absent or conclusory.  The Kings simply allege Dr. Scott failed to obtain Cathy King's informed consent.  Because the Kings do not provide factual support, the court is not

---

[12] The Kings allege Cathy King ingested metoclopramide from 1988 to 2005, thus stopping before the FDA released the 12-week recommendation in 2009.  However, Schwarz, a manufacturer of Reglan® tablets, in 2004 added to its label that treatment should not exceed 12 weeks.  **See** *id.* ¶ 61.  Nevertheless, the Kings' complaint does not contain any information whether Dr. Scott knew this information or whether Dr. Scott prescribed Cathy King generic metoclopramide tablets with this label.

14

convinced the Kings have a reasonable basis to impose liability on Dr. Scott under state law.

In addition to conclusory allegations against Dr. Scott and the absence of facts, when the Pittle email is read in conjunction with the Kings' complaint, the reason for Dr. Scott's joinder is clear to the court: the Kings want to avoid federal court and possible dismissal of brand-name drug manufacturers to have the innovator liability theory addressed in state courts. **See** Filing No. 1-1 - Pittle email ("I was planning on filing new cases in state courts with physician defendants in order to get the [innovator liability] question presented to a number of State Supreme Courts."). The Kings improperly joined a non-diverse defendant, Dr. Scott, without alleging a reasonable basis to impose liability under state law and for the purpose of defeating federal diversity jurisdiction. Therefore, such claim should be dismissed and the motion to remand denied. As a result, complete diversity is present. Accordingly,

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

The plaintiffs' Motion to Remand (Filing No. 22) be denied and Monte M. Scott, M.D., be dismissed.

**ADMONITION**

Pursuant to [NECivR 72.2](NECivR 72.2) any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 26th day of November, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge